# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DONNA M. SCHUCHMAN, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) Case No.   CIV-11-1168-D |
| MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration, | ) ) ) ) |
| Defendant. | ) ) |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) denying Plaintiff's application for disability insurance benefits (DIB). This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B)-(C). The Commissioner has answered and filed the administrative record (hereinafter TR. ___). The parties have briefed their positions, and the matter is now at issue. For the reasons stated herein, it is recommended that the Commissioner's decision be **REVERSED AND REMANDED** for further administrative proceedings.

## PROCEDURAL HISTORY

Plaintiff's application for DIB alleged a disability beginning May 2, 2005 (TR. 17). The SSA denied her application initially and on reconsideration at the administrative level (TR. 17). The ALJ held a hearing *de novo* on October 13, 2010 (TR. 25-47). Plaintiff and her husband appeared at the hearing with counsel and testified in support of Plaintiff's application (TR. 28-44). A vocational expert (VE) also testified at the request of the ALJ

(TR. 44-46). The ALJ issued his decision on October 28, 2010, finding that Plaintiff was not disabled at any time before her insured status expired on June 30, 2010 (TR. 14-24). The Appeals Council denied the Plaintiff's request for review on September 8, 2011, and the decision of the ALJ became the final decision of the Commissioner (TR. 1-4).

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520. At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since May 2, 2005, the alleged onset date (TR. 19). At step two, the ALJ concluded that Plaintiff's only severe impairment was asthma (TR. 19). At step three, the ALJ determined that Plaintiff's severe impairment did not meet or equal listing 3.03, pertaining to asthma, as described at 20 C.F.R. Part 404, Subpart P, Appendix 1, (TR. 20).

At step four, the ALJ first formulated Plaintiff's residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)

(TR. 20). Because the ALJ's RFC determination encompasses the full range of light work with no nonexertional or environmental limitations, the ALJ found at step four that Plaintiff was capable of performing all her past relevant work (PRW) as a collections clerk; diabetic representative; medical assistant; receptionist; teacher; and catering coordinator (TR. 23).

Without changing the RFC, the ALJ made "alternative findings" at step five:

> The claimant was born on February 21, 1963, and was 47 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563). The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564). Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P. Appendix 2)

(TR. 23). This alternative finding is the result of a direct application of the Medical-Vocational rules, even though the ALJ stated that he was using the rules as a "framework." The ALJ then made a second "alternative" finding based on Plaintiff's age, education, work experience, RFC and the testimony of the VE:

> Through the date last insured, if the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21. However, the claimant's ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, through the date last insured, the in jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity

(TR. 38). Based on the testimony of the VE, the ALJ determined that Plaintiff could perform the requirements of representative occupations such as mail clerk, assembler worker, order clerk, and machine operator (TR. 24). The ALJ does not identify the "additional limitations" which would make this alternative analysis necessary.

## ISSUES PRESENTED

Plaintiff claims the ALJ's credibility analysis consists solely of boilerplate language taken from a template drafted by the Social Security Administration and used in decisions of administrative law judges across the country. Plaintiff contends that the ALJ's credibility assessment and RFC finding are both deficient because the decision suggests that the RFC determination was made without consideration of the credibility of Plaintiff's statements regarding the severity of her symptoms. Plaintiff further contends that the ALJ erred in

failing to properly apply the required analysis at each phase of step four of the sequential evaluation.

## ANALYSIS

### I. <u>Bjornson Error</u>

Plaintiff contends that, when assessing her credibility, the ALJ committed reversible error by using boilerplate language derived from a template developed by the SSA. First, the ALJ determined that Plaintiff's RFC allows her do a full range of light work (TR. 20). Then, after reciting the two-step process required for the assessment of a claimant's symptoms and credibility, (TR. 21), the ALJ summarized Plaintiff's testimony regarding her impairments and her daily activities:

> The claimant testified at the hearing that she has asthma and does [a] breathing treatment every night. She stated that she uses an inhaler 3-5 times a day at home. The claimant testified that she has difficulty with perfumes, room sprays, dry cleaning, and does not pump her own gas. She stated that she has insomnia and spends most of the day on the phone with family. The claimant testified that she can do some cooking, does one load of laundry per week, and goes shopping with her husband to WalMart. She stated that she has made an effort to find employment, but no one can accommodate her. The claimant's husband testified that the claimant stays in the house

(TR. 21). At that point, the ALJ inserted the boilerplate language challenged by Plaintiff:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are

5

>       inconsistent with the above residual functional capacity assessment

(TR. 21).

In *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012), the Seventh Circuit Court of Appeals held that this conclusory, boilerplate language, drafted by the SSA for insertion into any ALJ decision, implies that ability to work is determined without regard to the claimant's credibility, and that the ability to work is then used to discount the claimant's credibility. *Id.* at 644 – 645. In this case as in *Bjornson*, the organization of the ALJ's decision certainly implies as much.  In reality, of course, the assessment of a claimant's ability to work often depends at least in part on the credibility of his or her statements concerning the "intensity, persistence, and limiting effects" of symptoms. *Id.* at 645. In other words, "an applicant's credibility cannot be ignored in determining his ability to work."  *Id.* at 646.  As for mass use of SSA "templates" in decisions, the Seventh Circuit Court of Appeals warned, "The Social Security Administration had better take a close look at the utility and intelligibility of its 'templates.'" *Id.* at 646.

The Tenth Circuit Court of Appeals has also disapproved of the use of boilerplate language to justify the rejection of a claimant's subjective complaints of pain or other symptoms. *See Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004).  In *Hardman*, the ALJ recited boilerplate language, stating that full consideration had been given to claimant's subjective complaints in accordance with the factors set forth in 20 C.F.R. §§ 404.1529 and 416.929; SSR 96-7p, and *Luna v. Bowen*, 834 F.2d 161, 165 (10th Cir. 1987). But the ALJ then rejected claimant's allegations of pain and other limitations,

6

using more boilerplate language and few actual facts pertaining to the claimant's testimony:

> Claimant's allegations are not fully credible because, but not limited to, the objective findings, or the lack thereof, by treating and examining physicians, the lack of medication for severe pain, the frequency of treatments by physicians and the lack of discomfort shown by the claimant at the hearing

*Hardman*, 362 F.3d at 679. The Tenth Circuit explained the dangers of relying on boilerplate language:

> Such boilerplate language fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible. More troubling, it appears that the Commissioner has repeatedly been using this same boilerplate paragraph to reject the testimony of numerous claimants, without linking the conclusory statements contained therein to evidence in the record or even tailoring the paragraph to the facts at hand, almost without regard to whether the boilerplate paragraph has any relevance to the case

*Id.* at 679 (citation omitted).

In this case, the ALJ obviously used the boilerplate language from the template in describing Plaintiff's credibility, but the ALJ's decision does include a summary of Plaintiff's testimony regarding her symptoms and nonexertional limitations. *See supra* at 5. The question in this case, then, is whether the ALJ sufficiently supported his credibility finding, despite the heavy use of meaningless boilerplate language. "[So] long as the ALJ 'sets forth the specific evidence he relies on in evaluating the claimant's credibility,' he need not make a 'formalistic factor-by-factor recitation of the evidence.'" *Keyes-Zachary v. Astrue*, ___ F.3d ___, 2012 WL 4076114 (10th Cir. 2012) (*citing Qualls*

*v Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)). The ALJ in the instant case cited and relied on daily activities which Plaintiff had reported in a functional report:

> On October 21, 2009, the claimant stated that she got up, took a breathing treatment, read, drank coffee, fed the dogs, picked up around the house, did laundry when needed, watched television, got on the computer, ate lunch, sat outside if conditions were good, started dinner, did the dishes, spent time with her husband, took another breathing treatment, watched television, and went to bed around 10. She stated that she went grocery shopping once a week for 1-2 hours, meditated, spent a lot of time on the phone with family, visited friends at their house once or twice a week, went to Tan and Toned 1-3 times a week, and dined out once a week (Exhibit 9E). This evidence is persuasive that the claimant is able to leave her house and be in an "uncontrolled" environment

(TR. 22). The ALJ then cited a medical report from a pulmonary specialist who had not placed functional restrictions on Plaintiff which would have precluded light work (TR. 22). As Plaintiff notes, however, the absence of evidence is not evidence. *See Thompson v. Sullivan,* 987 F.2d 1482, 1491 (10th Cir. 1993). The lack of functional restrictions imposed by the pulmonologist does not prove that Plaintiff could actually perform the physical requirements of the full range of light work. The ALJ's credibility assessment, which relies almost entirely on a statement of claimant's limited daily activities, is insufficient to support the ALJ's credibility finding. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1220–21 (10th Cir. 2004) (ALJ may not rely on minimal activities of daily living as substantial evidence that a claimant does not have disabling symptoms).

The insubstantial evidence supporting the ALJ's credibility determination requires remand for further proceedings.

## II. <u>Errors at Step Four</u>

Plaintiff contends that the ALJ erred at each of the three phases of step four. First, Plaintiff challenges the ALJ's RFC formulation as unsupported by substantial evidence. Plaintiff challenges the second phase of step four because the ALJ failed to make specific findings regarding the demands of Plaintiff's PRW. Finally, Plaintiff contends that the ALJ's errors at phase one and two of step four make it impossible for a reviewing court to determine whether Plaintiff could perform the demands of her PRW.

The ALJ's RFC determination—that Plaintiff can perform the full range of light work with no nonexertional restrictions—is not supported by substantial evidence in the record. In formulating this RFC, the ALJ necessarily considered the opinion of Dr. Gilbert E. Emde, Plaintiff's treating physician. On September 8, 2010, Dr. Emde completed a Report of Attending Physician. Dr. Emde diagnosed Plaintiff with uncontrolled asthma. He stated that Plaintiff had reactions to environmental agents which caused severe bronchospasms. He further stated that Plaintiff required a controlled environment. In answer to a direct question on the form, Dr. Emde answered that he believed Plaintiff was disabled and that he did not foresee her ever being able to maintain full-time employment (TR. 289).

The ALJ stated that he was not giving Dr. Emde's opinion controlling weight because he was not a pulmonary specialist, his opinion conflicted with his treatment records, and he had only attended Plaintiff a few times over the previous three years

(TR. 22). Additionally, the ALJ stated Dr. Emde's opinion was not supported by the treatment records of Dr. Cole, a pulmonary specialist, who stated in a medical record dated September 22, 2010, that Plaintiff had "definitely improved" on Symbicort and was no longer using an inhaler at night (TR. 22).

The initial determination an ALJ must make with respect to a treating physician's medical opinion is whether it is conclusive and must, therefore, be accorded "controlling weight" on the matter to which it relates. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). A treating physician's opinion must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Id.* (applying SSR 96–2p, 1996 WL 374188, at *2); 20 C.F.R. §§ 404.1527(d)(2). The ALJ cannot give a treating physician's opinion controlling weight if it is deficient in either of these respects.

Even if a treating opinion is not given controlling weight, however, the opinion is still entitled to deference; at the second step of the analysis, the ALJ must state how much weight the opinion is being given even if it is being rejected outright. *Watkins*, 350 F.3d at 1300–01. If the ALJ does not complete the second part of the analysis, a remand is required. *Id.* at 1301. As the relevant ruling explains:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors

10

> provided in [§§ ] 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96–2p, 1996 WL 374188, at *4 (emphasis added). This second inquiry is governed by its own set of factors, summarized as follows:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir.2004) (quotation omitted). In applying these factors, the ALJ's findings must be "sufficiently specific to make clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reason for that weight." *Id.* (quotation omitted). In this case, the ALJ did discuss some of the factors related to the second inquiry—the weight the medical opinion should be given. The ALJ failed, however, to specify the weight he was giving Dr. Emde's opinion. This omission impacts the ALJ's RFC findings. Because the RFC assessment is not supported by substantial evidence in the record, remand is required. The ALJ's decision cannot be salvaged by his alternative step five findings because they, too, are the products of an insufficient RFC assessment. It is therefore recommended that this case be reversed and remanded for further proceedings.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner is not supported by substantial evidence and should be **REVERSED AND REMANDED** for further administrative proceedings.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **November 13, 2012**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED on October 26, 2012.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE